715 P.2d 972

Karen I. BLAYNEY, SSA 518 66 6029, Claimant-Respondent,

v.

CITY OF BOISE, Employer-Respondent,

and

State of Idaho, Department of Employment, Appellant.

No. 15796.

Supreme Court of Idaho.

Feb. 26, 1986.

Jim Jones, Atty. Gen., and Carol Lynn Brassey, Deputy Atty. Gen., for appellant.

Susan Lynn Mimura, Boise, for employer-respondent City of Boise.

Karen I. Blayney, pro se.

DONALDSON, Chief Justice.

This is an appeal by the Department of Employment from an order of the Industrial Commission that repayment of certain unemployment benefits erroneously paid to claimant-respondent Karen Blayney should be waived pursuant to I.C. § 72–1369(a)(4). We believe the Industrial Commission's conclusions are supported by substantial and competent evidence and, therefore, affirm its order.

The facts of the case are as follows: On August 17, 1983, Blayney filed a claim with the Department of Employment for unemployment benefits. She had been employed by the City of Boise but was discharged, according to her supervisor, because of her poor attitude and neglect of duties. On September 2, 1983, the Department made a Determination that Blayney was ineligible for benefits because her discharge was for "misconduct" as it is defined in I.C. § 72–1366(e). Blayney sought a Redetermination arguing that too much had been expected of her and that she and the supervisor had a personality problem. The Redetermination, issued on September 22, 1983, affirmed the Determination. The Determination and the Redetermination notices sent to Blayney contained the following, located in the middle of the form, which were checked and filled in as noted:

"NOTICE TO CLAIMANT/EMPLOYER: Under provisions of the Idaho Employment Security Law, it is determined that the claimant is:

☐ Eligible for Unemployment insurance benefits effective _____.

☑ Not eligible for Unemployment Insurance benefits effective 8–14–83, until he/she returns to work and earns twenty (20) times his/her weekly benefit amount, equaling $2,180.00, in bona fide work after 8–15–83, and then becomes unemployed through no fault of his/her own."

In bold print at the top, the forms also notified the claimant or employer of the 14-day time limit for exercising their protest rights and told the claimant "If a protest is filed, you should continue to report on your claim as long as you are unemployed."

Blayney did protest the Redetermination by appealing to an appeals examiner in the Department. A hearing was held on November 10, 1983. On November 21, 1983, Blayney was hired by KIZN/KTOX Radio Station, and therefore, she stopped filing her weekly unemployment certification cards. The appeals examiner issued her decision on November 23, 1983, affirming the Department's Redetermination. The appeals examiner's decision warned of the 14-day time limit to file an appeal with the Industrial Commission and told Blayney to continue to report to the Department as long as she was unemployed. The examiner made no mention, however, of the requirement that Blayney was not eligible for benefits until she returned to work and earned 20 times her weekly benefit amount and then became unemployed through no fault of her own. (The requirement of I.C. § 72–1366(n)).[1] Although employed with the radio station at the time, Blayney decided to appeal the examiner's decision to the Industrial Commission on November 28, 1983.

On December 11, 1983, Blayney filed a second claim for unemployment benefits following her discharge from the radio station. The job had only been temporary and, according to Blayney's employer, a person more qualified for the position had been hired. Blayney had earned a total of $436 with the radio station. On December 29, 1983, a Determination was made that there was no evidence of misconduct and, therefore, Blayney was eligible for unemployment benefits. The form Blayney received was exactly the same type of form she had received on September 2, 1983, but this time the choices in the middle of the form were marked and filled in as follows:

"NOTICE TO CLAIMANT/EMPLOYER: Under provisions of the Idaho Employment Security Law, it is determined that the claimant is:

☑ Eligible for Unemployment Insurance benefits effective <u>12–11–83</u>.

☐ Not eligible for Unemployment Insurance benefits effective _____, until he/she returns to work and earns twenty (20) times his/her weekly benefit amount, equaling _____, in bona fide work after _____, and then becomes unemployed through no fault of his/her own."

Blayney's appeal on her first claim was still unresolved and pending before the Industrial Commission when she was notified by the Department of her eligibility for benefits on her second claim. The Department knew of Blayney's pending appeal when it found her eligible for benefits based on her second claim. After approximately three weeks, Blayney had not received any benefit checks, so she called the Department to find out what was wrong. The woman at the Department with whom Blayney spoke told her that there was a "stop" on her claim, that she did not know why it was there, and that she would remove it.

In the week of January 8, 1984, Blayney received three checks for $109.00 each. In the week of January 15, she received another check for $109.00, and the following week she received another check for the same amount. On January 23, 1984, Blayney obtained another job, and her benefits ceased.

On March 5, 1984, the Industrial Commission affirmed the appeals examiner's decision of Blayney's ineligibility on her first claim, incorporating by reference and adopting the appeals examiner's findings. Some time after the Department received the Industrial Commission's decision, it realized it had erred in paying Blayney unemployment benefits on her second claim following her discharge from the radio sta-

---

1. Last year the requirement of I.C. § 72–1366(n) was reduced to 16 times the claimant's weekly benefit amount. Act of March 22, 1985, ch. 203, 1985 Idaho Sess. Laws 506.

tion, since she had not earned 20 times her weekly benefit amount. The Department made a Determination of Improper Payment on May 24, 1984, and indicated the improper payment was attributable to the Department's error. The Department also denied waiver of repayment noting that the overpayment was not created solely by departmental error, and that Blayney should have known she was receiving benefits to which she was not entitled. The Department did not explain what Blayney did to constitute error, nor did it explain how she should have known she was not entitled to the benefits.

Blayney sought a Redetermination and explained in a letter dated June 4, 1984, that the error was solely departmental, and said, "I made no false statements on the claim I filed for unemployment benefits [on December 11, 1983] and had absolutely no intent to mislead the Department in regard to my eligibility." On June 14, 1984, the Department's Redetermination affirmed the May 24 Determination of Improper Payment and continued to deny Blayney a waiver of repayment. In the Redetermination, the Department said, "The claimant's overpayment was not solely the result of Department error. The claimant had four (4) decisions that she was ineligible and was fully aware that to purge that ineligibility she must return to work and earn wages equal to at least $2,180. She had full knowledge she had not earned enough wages to be eligible. The claimants request for waiver is denied."

As noted above, this was not entirely true, since by the time Blayney began receiving benefits in January of 1984 based on her second claim, she had received only three (3) decisions that she was ineligible on her first claim, the appeal of which was still pending before the Commission. Blayney had received a "fourth" decision from the Department, but, as noted above, it explained that she was *eligible* to receive benefits on her second claim. Neither the appeals examiner's decision on her first claim nor the Determination that Blayney was eligible on her second claim told Blayney of the requirement that she must have earned at least $2,180 to be eligible to receive unemployment benefits. Blayney noted these discrepancies when she protested the Department's Redetermination in a letter dated June 27, 1984. Blayney also explained that when she filed her second claim on December 11, 1983, she spoke with a claims section representative who knew of the appeal status of her first claim. Blayney stated that she did not know that she had to have earned $2,180 to become eligible for benefits, and was not so informed by the Department when she made her second claim.

On July 12, 1984, a hearing on Blayney's protest of the Redetermination was held before a Department appeals examiner. The Department did not appear at this hearing. The examiner agreed with Blayney to the extent that it held that the record clearly established the overpayment to Blayney was due solely to the Department's error. However, the examiner denied a waiver of repayment, noting that Blayney had a way of knowing she was receiving benefits to which she was not entitled based on the notice of the Determination and Redetermination of her first claim which she received in September of 1983.

Blayney then appealed to the Industrial Commission. Neither Blayney nor the Department requested a hearing. Therefore, the matter was before the commission on the record of the proceedings before the appeals examiner. The commission reviewed the record and adopted the examiner's findings of fact, which have been set forth above. The commission agreed with the examiner's conclusion that the overpayment of benefits to Blayney was due solely to error on the part of the Department. However, the commission also found that, under the circumstances of this case, the record established that Blayney "had no way of knowing that she was not entitled to the benefits which she subsequently received." The Department now appeals the Industrial Commission's findings of fact and conclusions of law in this case which is before us without oral argu-

ment, due most likely to the small amount of money involved.

■ We begin by noting that our standard of review in this case is limited to determining whether the Industrial Commission's findings and conclusions are supported by substantial and competent evidence. ID. CONST. art. 5, § 9; I.C. § 72–732; *Neufeld v. Browning Ferris Industries*, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985). We also note that even though the evidence before the commission was presented by written record rather than through personal appearances at a hearing, our standard of review remains the same. *Poss v. Meeker*, 109 Idaho 920, 923, 712 P.2d 621, 624 (1985); *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 234, 706 P.2d 1344, 1345 (1985).

■ It is clear from the record, as the appeals examiner and the Industrial Commission found, and as the Department now concedes, that the overpayment of benefits to Blayney in January of 1984, was due solely to error on the part of the Department. However, before reimbursement of the overpayment may be waived, I.C. § 72–1369(a)(4) requires more proof than merely that the overpayment was due solely to departmental error. In addition, the overpayment must have been "made to a claimant who had no way of knowing that he was receiving benefits to which he was not entitled and that he would have to repay the benefits he received if it were subsequently determined that he was ineligible for those benefits." I.C. § 72–1369(a)(4).[2]

We agree with the Industrial Commission's finding that when Blayney filed her second claim for unemployment benefits on December 11, 1983, she did not know of the requirement (the I.C. § 72–1366(n) requirement) that she must have earned 20 times her weekly benefit amount with the radio station to be eligible for benefits. The appeals examiner's decision on her first claim, which was sent to her on November 23, 1983, explained its interpretation of the facts of her discharge from employment with the City of Boise, and why she was ineligible for benefits. It was a far more detailed explanation of her case than were the one-page preprinted forms sent to her in September of 1983, *i.e.*, the Determination and the Redetermination. Yet, the appeals examiner did not even mention the § 72–1366(n) requirement, let alone explain if or how this requirement would be affected if Blayney chose to take an appeal of her claim to the Industrial Commission.

Both Blayney and the Department knew her first claim was on appeal when she filed a second claim. In fact, Blayney reminded the Department of this when she spoke with its employee about her eligibility. The Department went ahead and found Blayney eligible for benefits on her second claim, and notified her on December 29, 1983. As noted above, the Determination that Blayney was eligible on her second claim was on exactly the same type of form as the September 2 Determination that she was ineligible on her first claim, except this time the § 72–1366(n) requirement was *not* checked off. Rather, the statement declaring she was eligible *was* checked off and filled in as being effective from December 11, 1983. Thus, anyone reading the Department's December 29, 1983 Determination at the time would inexorably conclude that the § 72–1366(n) requirement no longer applied. It was based on *this* Determination that Blayney began receiving her benefit checks in January of 1984. Clearly, she had no way of knowing the Department—which had access to all her files and had an intimate knowledge of both Idaho's Employment Security Law and their own internal regulations—erroneously processed Blayney's claim. At all times relevant to the Determination of Blayney's eligibility and her receipt of the checks, the Department had the means to remind Blay-

---

**2.** Recently, the clause, "and that he would have to repay the benefits he received if it were subsequently determined that he was ineligible for those benefits," was repealed by the second session of the 48th Legislature in H.B. 395, evincing an intent to simplify the waiver requirements of I.C. § 72–1369.

ney of the disqualifying factor contained in I.C. § 72–1366(n).

It wasn't until the Determination of Blayney's ineligibility on her first claim became final, with the March 5, 1984 judgment of the Industrial Commission, that the Department realized its error. Before that time, all communication with Blayney on her second claim indicated the Department considered Blayney completely eligible to receive benefits under this second claim. The facts of this case clearly justify a waiver of repayment under the present version of I.C. § 72–1369.

As the Department correctly points out, I.C. § 72–1369 was amended in 1973 and 1980. Those amendments made it much easier for the Department to require repayment.[3] However, the amendments could not have been intended to mean that *all* erroneously overpaid claimants must always repay the Department, or that it was left purely to the Department's discretion to decide if the claimant must repay, which would lead to the same result. If the drafters of the amendments had intended this, they would not have included subsection (a)(4). The intent of the new version of I.C. § 72–1369 was to draw a distinction between those overpayments that are the result of a false statement, misrepresentation, or concealment of a material fact by the claimant, and those overpayments that are not. Overpayments in the former category cannot be waived and must be deducted from any future benefits payable to the claimant. I.C. § 72–1369(a)(2)(B) and (a)(4). Overpayments in the latter category "may, at the discretion of the director or his authorized representative, be deducted from any future benefits payable to said claimant under this act." I.C. § 72–1369(a)(2)(A). This same "at the discretion

of the director" language, however, is not repeated in the waiver provision of subsection (a)(4).

Therefore, reading the whole of I.C. § 72–1369 together, in order for repayment of an erroneously paid benefit to be waived, the claimant must show:

(1) that such payments were not the result of a false statement, misrepresentation or concealment of a material fact by the claimant;

(2) that such payments were made solely as a result of department error or inadvertence; and

(3) that such payments were made to a claimant who had no way of knowing that he was receiving benefits to which he was not entitled and that he would have to repay them if it were subsequently determined that he was ineligible for those benefits.[4]

This is, indeed, a heavy burden for the claimant to bear, certainly much heavier than existed under the old version of I.C. § 72–1369. However, it is not, and of course cannot be, totally impossible for the claimant to ever overcome this burden. The evidence in the record substantially and competently supports the Industrial Commission's conclusion that Blayney has overcome her burden and is entitled to a waiver of repayment.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, BAKES, BISTLINE and HUNTLEY, JJ., concur.

---

**3.** The older version of I.C. § 72–1369, which was significantly altered by amendment in 1973 and 1980, was a far more liberal waiver provision than the current version. In fact, under the old version, if an erroneous overpayment of benefits was made to a claimant, he was not liable to repay the Department if the claim was made in good faith, the benefits were received in good faith, and the claim was made and the benefits received at a time when such person

was unemployed. I.C. § 72–1369 (1973); *Claim of Sapp*, 75 Idaho 65, 72, 266 P.2d 1027, 1031 (1954). Thus, so long as there was no misrepresentation or nondisclosure of any material fact by the claimant, the Department could not require the claimant to refund the overpayment. *Id.*

**4.** *See* footnote 2, *supra*.