175 P.3d 199

**Doroteo Mike HERNANDEZ, Claimant–Appellant**

v.

**TRIPLE ELL TRANSPORT, INC., Employer.**

and

**State Insurance Fund and Liberty Northwest Ins. Corp., Sureties, Defendants/Respondents.**

No. 33592.

Supreme Court of Idaho, Twin Falls, November 2007 Term.

Dec. 27, 2007.

Kent D. Jensen, Burley, for appellant.

M. Jay Meyers, Pocatello, for employer-surety respondent.

Monte R. Whittier, Boise, for surety respondent.

W. JONES, Justice.

On May 4, 2004, Hernandez signed a lease agreement with Triple Ell Transport, Inc. (Triple Ell) to lease his tractor to Triple Ell and to haul and unload materials. While carrying out these duties in California, Hernandez tore a muscle in his right leg and suffered a small hematoma. As a result of complications, he later had surgery and Hernandez incurred medical bills of $28,939.21. For these costs, he filed a workers' compensation claim with the State Insurance Fund which was the surety for Triple Ell. The claim under the State Insurance Fund was denied because the Industrial Commission found that he was an independent contractor rather than an employee of Triple Ell. As a result, Hernandez was ineligible to receive benefits under the workers' compensation policy from the State Insurance Fund.

The lease agreement required Hernandez to insure himself, or to provide an exemption from such insurance, and to insure his employees with workers' compensation insurance. Hernandez did not obtain workers' compensation insurance, but a Liberty Northwest workers' compensation insurance policy was obtained for Hernandez and his employees, and premiums were withheld from Hernandez' paychecks. Although Hernandez noticed that insurance premiums were being deducted from his check, he did not inquire regarding the nature or extent of the insurance and claims to have been unaware that he was being charged for workers' compensation insurance. Hernandez never elected coverage for himself as a sole proprietor under the Liberty Northwest policy as is specifically required by I.C. § 72–213. Although Hernandez had no employees, the record reflects that he did on occasion hire a lumper to help unload trucks at the destination. Liberty Northwest denied coverage to Mr. Hernandez on the grounds that he had not elected to be covered by its policy, and the Industrial Commission upheld the denial. From this decision, Hernandez appeals.

■ Idaho Code § 72–732 contains the standard under which we review the Commission's orders and awards: the Court may set aside an order or award when the Commission's findings of fact "are not based on any substantial competent evidence." So, if the Industrial Commission's findings of fact are supported by substantial competent evidence, they will not be disturbed by the court on appeal. *Levesque v. Hi–Boy Meats, Inc.,* 95 Idaho 808, 520 P.2d 549 (1974); *Gradwohl v. J.R. Simplot Co.,* 96 Idaho 655, 534 P.2d 775 (1975); *Dean v. Dravo Corp.,* 97 Idaho 158, 540 P.2d 1337 (1975). In the presence of conflicting evidence in workers' compensation proceedings, the Supreme Court continues to recognize the Industrial Commission as the arbiter, and acknowledges that the weight to be accorded evidence is within their particular province. *Hayes v. Amalgamated Sugar Co.,* 104 Idaho 279, 658 P.2d 950 (1983).

■ However, the Supreme Court is not bound by the conclusions of law which are drawn by the Industrial Commission; in other words, the Supreme Court must set aside the order of the Commission where it failed to make a proper application of the law to

the evidence. *Blayney v. City of Boise,* 110 Idaho 302, 715 P.2d 972 (1986).

An "employee" is "any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer." I.C. § 72–102(12).

An "employer" is

any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed. I.C. § 72–102(13)(a).

An "independent contractor" is "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished." I.C. § 72–102(17).

Whether someone is an employee versus an independent contractor is determined factually. *Mortimer v. Riviera Apartments,* 122 Idaho 839, 845, 840 P.2d 383, 389 (1992). "The test in determining whether a worker is an independent contractor or an employee is whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results." *Kiele v. Steve Henderson Logging,* 127 Idaho 681, 683, 905 P.2d 82, 84 (1995). "Unlike control over the manner, method or mode by which a task is performed, merely exerting control over the results of the work does not suggest an employment relationship." *Excell Construction, Inc. v. State Department*

*of Labor,* 141 Idaho 688, 695, 116 P.3d 18, 25 (2005).

"Four factors are traditionally used in determining whether a 'right to control' exists, including, (1) direct evidence of the right; (2) the method of payment; (3) furnishing major items of equipment; and (4) the right to terminate the employment relationship at will and without liability." *Burdick v. Thornton,* 109 Idaho 869, 871, 712 P.2d 570, 572 (1985). None of these factors is controlling, *Kiele v. Steve Henderson Logging,* 127 Idaho 681, 683, 905 P.2d 82, 84 (1995), and "when a doubt exists as to whether an individual is an employee or an independent contractor under the Workmen's Compensation Act, the Act must be given a liberal construction in favor of finding the relationship of employer and employee." *Burdick v. Thornton,* 109 Idaho 869, 871, 712 P.2d 570, 572 (1985).

Title 49 § CFR 376.12(c)(1) states that a written lease under § 376.11(a) "shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

Title 49 § CFR 376.12(c)(4) clarifies the upshot of § 376.12(c)(4), stating that nothing in § 376.12(c)(1) "is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee."

Title 49 § CFR 376.11(c)(1) requires an authorized carrier who acquired use of equipment to "identify the equipment as being in its service as follows: (1) During the period of the lease, the carrier shall identify the equipment in accordance with the FMCSA's requirements in 49 CFR part 390 of this chapter (Identification of Vehicles)." Title 49 CFR § 390.21(b) provides these requirements.[1]

---

**1.** It states that:

The marking must display the following information:
(1) The legal name or a single trade name of the motor carrier operating the self-propelled CMV, as listed on the motor carrier identifica-

tion report (Form MCS–150) and submitted in accordance with § 390.19.
(2) The motor carrier identification number issued by the FMCSA, preceded by the letters "USDOT".
(3) If the name of any person other than the operating carrier appears on the CMV, the

The Referee found that the following evidence yielded the conclusion that Hernandez was an independent contractor for Triple Ell:

- Hernandez had the right to refuse any load Triple Ell offered
- Hernandez could purchase fuel or maintenance items from private vendors of his choice, not just those with whom Triple Ell had contracted
- Hernandez was responsible for the cost of fuel and maintenance items related to the truck
- Hernandez owned the truck, which was the most important equipment for performing the work
- Hernandez could either drive the truck himself or provide another driver
- Triple Ell set the delivery date and identified the destination of the materials, but did not control the route, hours, breaks, or meals involved in transport
- Hernandez was paid a percentage of each load
- Taxes were not withheld from Hernandez' pay
- Hernandez' earnings were reported as non-employee compensation on IRS Form 1099
- The written agreement itself described Hernandez as a contractor

The Referee also took note of the following opposing evidence:

- During the lease, Hernandez could not use his truck to haul loads for other companies
- Hernandez was required to carry Triple Ell's emblem on his truck
- Triple Ell's dispatcher arranged for the loads Hernandez hauled by designating the destinations and arranging the return loads
- Because Hernandez did not own a trailer, trailers were provided by Triple Ell

- Hernandez used Triple Ell's funds to purchase gasoline for his truck, but these funds would subsequently be subtracted from Hernandez' check

According to the Referee, this case was partially affected by a federal law that regulated the professional relationship between motor carriers and owners of leased equipment. She reasoned that because 49 CFR § 376.12(c)(4) mandated that Triple Ell engage in activities that normally would favor a finding of an employer-employee relationship, this federal regulation eliminated many of the traditional factors used to determine employment status. The factors were eliminated, she held, because they were already required by federal law and therefore did not affect the level of control that Triple Ell could exert over Hernandez. For support, she relied on the similar Pennsylvania case *Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board*, 563 Pa. 480, 762 A.2d 328 (1999).

In *Universal Am–Can*, the Pennsylvania court was faced with the issue of whether an owner-operator of a tractor-trailer was an employee for purposes of workers' compensation law, when the owner leased the tractor-trailer to the purported employer. *Universal Am–Can* at 484, 762 A.2d 328. In that case, federal law mandated that the purported employer maintain exclusive possession, control and use of the leased vehicles. *Id.* at 486–87, 762 A.2d 328. Though 49 CFR § 376.12(c)(1) imposed these requirements, the court noted that § 376.12(c)(4) explicitly stated that § 376.12(c)(1) was not intended to affect whether the lessor or driver is an independent contractor or an employee. *Id.* at 487, 762 A.2d 328. The court additionally found that the owner was not necessarily an employee simply because the purported employer adhered to the 49 CFR § 376.11(c) specifications regarding the placement of in-

name of the operating carrier must be followed by the information required by paragraphs (b)(1), and (2) of this section, and be preceded by the words "operated by."
Section 390.21(c) expands on the requirements as follows:
    The marking must—
    (1) Appear on both sides of the self-propelled CMV;

(2) Be in letters that contrast sharply in color with the background on which the letters are placed;
(3) Be readily legible, during daylight hours, from a distance of 50 feet (15.24 meters) while the CMV is stationary; and
(4) Be kept and maintained in a manner that retains the legibility required by paragraph (c)(3) of this section.

signia on the vehicle. *Id.* Instead, the insignia was "merely one of the many factors to be considered when determining the employee/independent contractor status...." *Id.* at 489, 762 A.2d 328.

The Referee listed several facts supporting the labeling of Hernandez an independent contractor, and opined that "[o]utside of the extensive federal regulations involved in this case, the above factors satisfy the four-factor test, with factors 1–3 ... weighing in favor of independent contractor status." Again, the four factors used to determine employment status are: (1) direct evidence of the right; (2) the method of payment; (3) furnishing major items of equipment; and (4) the right to terminate the employment relationship at will and without liability. The factors supporting her finding are discussed as follows:

*Factor 1*

■ Hernandez admitted to direct evidence of the absence of Triple Ell's right to control him when he stated that he had the right to refuse any load Triple Ell offered. In addition, the contract Hernandez signed (and initialed ten times) referred to Hernandez as "CONTRACTOR" dozens of times. Moreover, Hernandez was permitted to hire assistants, and in fact admitted that he "occasionally" hired a lumper whose remuneration was subtracted from Hernandez' share of the loads delivered.

*Factor 2*

The method of payment was not a wage; instead, Hernandez received a percentage of each load that Hernandez delivered. In addition, Hernandez' earnings were reported as non-employee compensation on IRS Form 1099.

*Factor 3*

The most important piece of equipment, Hernandez' truck, was purchased by Hernandez. Furthermore, Hernandez admitted that he paid for the fuel when he responded as

follows to a question about whether he did so: "Well, I paid for it. They took it off my paycheck. So basically, yeah."

*Factor 4*

With regard to this factor, the contract states that the "Lease Agreement may be terminated by either party without cause upon thirty (30) days written notice to the other...."

The above evidence easily rises above the very low bar that the prevailing party must clear on an appeal from the Commission's finding. The Referee found that the first three factors favored a finding that Hernandez was an independent contractor, and that this evidence was sufficient to conclude as much.[2] Moreover, she considered countervailing evidence and deemed it insufficient to reach a contrary conclusion. The Commission's finding was supported by substantial competent evidence and should not be disturbed.

Hernandez contends that the Referee improperly applied federal law by using it "to supplant state law and to shield trucking companies from the 'right to control' analysis in determining employer/employee or independent contractor status." According to Hernandez, 49 CFR § 376.12 applies to "written lease requirements," which means that it would only be relevant to determine the validity of the lease agreement at issue.

■ This contention is incorrect. The Referee was not using this federal rule in order to "supplant state law," as demonstrated when she applied the relevant state law, i.e., the control test. Instead, she cited the federal rules simply to explain their effect on the control test's application. Specifically, she noted that several of the facts that may have suggested the existence of an employer-employee relationship were the result of federal law mandates. For example, when a purported employee carries the insignia of the purported employer, that fact normally

2. Because she concluded that factors 1–3 weighed in favor of a finding that Hernandez was an independent contractor, she implicitly seems to have concluded that the fourth factor did not. However, the fourth factor probably also weighed in favor of finding Hernandez an independent contractor, because the parties could "terminate the employment relationship at will and without liability" for no cause, simply by giving 30 days notice.

implies that the purported employee is subject to the purported employer's control. However, in this case, 49 CFR § 390.21 left Triple Ell no choice regarding the placement of its emblem on Hernandez' truck. Little effort is necessary to conclude that Triple Ell's adherence to federal law is no evidence of its control over Hernandez. The federal government—not Triple Ell—exerted control over Hernandez. Hence, the Referee did not misapply federal law. Because the Referee found that Hernandez was an independent contractor rather than an employee, Hernandez was rendered ineligible to recover workers' compensation from the State Insurance Fund, Triple Ell's surety.

Next, Hernandez argues that his workers' compensation coverage through Liberty Northwest was illusory and therefore invalid because it covered no one. The Referee found it unnecessary to resolve the issue of the validity of the Liberty Northwest policy because Hernandez had not elected coverage under that policy. However, Hernandez was contractually bound to carry workers' compensation insurance, and was issued a policy through Liberty Northwest. Both parties concede that this policy included a forged signature of Hernandez on the application. Liberty Northwest correctly notes, though, that the issues of fraud relating to the forged signature are not within the purview of the Industrial Commission, and hence are not relevant to this appeal.

██ Under I.C. § 72–707, it is the Commission's responsibility to determine "[a]ll questions arising under this law [Title 72], if not settled by agreement or stipulation...." In *Downey Chiropractic Clinic v. Nampa Restaurant Corporation*, 127 Idaho 283, 285, 900 P.2d 191, 194 (1995), this Court held that a claim does not arise under workers' compensation law when it involves a separate tort for which Idaho's workers' compensation law provides no remedy. Since the forged signature involves the issue of fraud, it is separate from Idaho's workers' compensation

scheme and does not arise under it. Therefore, the Commission lacked jurisdiction over that issue. Regardless, as the Referee held, it was not necessary to address the issue [3] of validity because Hernandez would not have been covered under the policy even if it were valid, because he did not elect coverage.

In support of Hernandez' position, he asked rhetorically, "why would a sole proprietor secure a policy of workers (sic) compensation insurance, when that sole proprietor had no employees, and then elect to exclude himself from coverage?" The first answer to Hernandez' rhetorical question is that he specifically contracted with Triple Ell to protect himself and his employees with workers' compensation insurance. The contract stated that "CONTRACTOR agrees to insure himself with Workman's Compensation insurance, or to provide an exception therefrom, and to insure his employees, if any, with Workman's Compensation."

██ The second explanation for the existence of Hernandez' workers' compensation policy is that Triple Ell likely was concerned about its potential liability for injuries to employees that Hernandez could hire. In other words, Triple Ell was concerned about prospective liability as a "statutory employer." A statutory employer is "anyone who, by contracting or subcontracting out services, is liable to pay worker's compensation benefits if the direct employer does not pay those benefits." *Robison v. Bateman–Hall, Inc.*, 139 Idaho 207, 210–11, 76 P.3d 951, 954–55 (2003); I.C. § 72–216(1), 216(2). So, because Hernandez was a contractor who may have hired employees, Triple Ell likely required Hernandez to obtain coverage in order to shield itself from liability as a statutory employer. In short, if Hernandez obtained coverage for his employees, Triple Ell would be free from worker's compensation liability to those employees. Therefore, the contractual provision at issue is perfectly un-

---

3. Apparently, Hernandez contends that Triple Ell had no authority to apply for workers' compensation on his behalf from Liberty Northwest and withhold premiums from his paycheck. The issue is not entirely clear, but it seems Hernandez contends Triple Ell defrauded him or misled him

to his detriment. The brief of Liberty Northwest indicates that a separate lawsuit has been filed in district court between Hernandez and Triple Ell regarding these issues which were not properly within the jurisdiction of the Industrial Commission.

**44**

derstandable and nowhere near as inscrutable as Hernandez would have it seem.

Not only is the policy's existence understandable, it also is not illusory. If an insurance policy "is truly illusory, the contract is void for lack of consideration...." *Vincent v. Safeco Co. of America*, 136 Idaho 107, 112, 29 P.3d 943, 948 (2001). A policy is illusory where "it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons." *Martinez v. Idaho Counties Reciprocal Management Program*, 134 Idaho 247, 252, 999 P.2d 902, 907 (2000). Additionally, "[t]his Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased." *Id.* Here, though, the language of the lease indicates that the purpose of the workers' compensation policy is to protect Triple Ell from liability to workers Hernandez hired (e.g., the lumper Hernandez paid). Therefore, the "precise purpose" of the policy was not defeated. While it is true that Hernandez paid for a policy under which he was not covered, it is not the case that the policy was valueless, as it covered the employees he could choose to hire. Moreover, Hernandez could have elected to cover himself but failed to do so. The policy is not illusory.

For the foregoing reasons, the Industrial Commission's decision is affirmed.

Chief Justice EISMANN, Justices BRUDICK, J. JONES and HORTON concur.

