# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47077

STATE OF IDAHO, ex rel,
INDUSTRIAL COMMISSION,

    Plaintiff-Counterdefendant-Appellant,

v.

SKY DOWN SKYDIVING, LLC, an Idaho
limited liability company; PAUL ALBERT
JANES, Member; and DENISE JANES,
Member; in their official and individual
capacities,

    Defendants-Counterclaimants-
Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2020 Term

Opinion filed: April 16, 2020

Karel A. Lehrman, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. D. Duff McKee, Senior District Judge. Robert L. Jackson Magistrate Judge.

The decision of the district court is <u>reversed and remanded.</u>

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Blair D. Jaynes argued.

Dinius and Associates, PLLC, Nampa, for Respondents. Kevin E. Dinius argued.

---

MOELLER, Justice.

This appeal concerns whether Sky Down Skydiving, LLC, improperly designated its tandem skydiving instructors and parachute packers as independent contractors, rather than as employees, thereby eliminating the need for worker's compensation insurance. After notifying the company that it was in violation of Idaho Code section 72-301, the Industrial Commission filed a civil law suit against Sky Down for penalties and injunctive relief. Following a bench trial, the magistrate court concluded that the instructors and parachute packers were independent contractors. The magistrate court then dismissed the Commission's complaint with prejudice.

1

After the case was dismissed, a witness contacted the Industrial Commission's counsel to recant his earlier testimony. The Commission then filed a motion for a new trial, which was denied by the magistrate court. The Commission filed an intermediate appeal with the district court, which affirmed the magistrate court's decision. The Commission then timely appealed to the Supreme Court. We reverse and remand because both of the lower courts erred by failing to apply the proper test and the district court erred in concluding there was substantial and competent evidence to support the magistrate court's findings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Sky Down Skydiving, LLC, is an Idaho limited liability company owned by Paul and Denise Janes, husband and wife (collectively "the Janes"). The Janes are the LLC's only members. Sky Down operates a licensed United States Parachute Association skydiving training center located at the Caldwell Industrial Airport in Canyon County, Idaho. It provides various services, including skydiving training and "tandem jumps" where a customer is harnessed to a qualified tandem instructor. The planes, parachutes, and skydiving equipment are owned by either Paul or Denise, or both, and the Janes lease that equipment to Sky Down for its use. Paul is a pilot, parachute rigger, and skydiving instructor for Sky Down, although another pilot comes in about once a month. Denise primarily handles Sky Down's bookkeeping and administrative functions, though she is also a skydiving instructor who can certify jumps.

Sky Down compensates tandem instructors $30 per jump and compensates parachute packers $10 per tandem chute packed and $5 per student parachute packed. All of the tandem instructors can also act as parachute packers. The tandem instructors have no set schedule, coming in to do jumps if they are available. Likewise, parachute packers have no set schedule—they can "come and go as [they] please."

Scheduling for jumps is handled by Sky Down, which contacts instructors from "a list of tandem instructors … to see if there is someone, who can come and do a jump." On a typical jump, the tandem instructors ride in the plane with the customers to a specific altitude, jump or "free fall" while attached to the customer, release the parachute, and then control the tandem descent to a landing area behind Sky Down's hangar. In addition, the tandem instructors may provide additional services, such as photographing or making a video recording of the skydiving experience. The tandem instructors provide their own altimeter, goggles, and gloves for

2

completing a tandem skydive. The tandem instructors also have their own camera equipment to record photos and videos for the customer.

On finishing the jump, the instructors upload the photos and videos onto Sky Down's computer for the customer to review for purchase. Customers then contact Sky Down for later media purchases. The tandem instructor who recorded the photos or videos apparently received most of the profits from those respective sales; however, the record is unclear as to the percentage of the proceeds, if any, Sky Down received from these sales.

After completing multiple jumps, tandem instructors submit "jump sheets" which record the work performed for Sky Down, and Sky Down gives each worker a check for the compensation owed. The jump sheets include the following data: the number of tandem jumps performed, the plane and altitude, videos or still pictures the instructor shot, and any personal sport jumps the instructor takes (as substitute compensation). "Pack sheets" are similarly structured with parachute packers filling in which parachutes they packed and the date they were packed, as well as any notes on whether the packer made personal jumps.

The record contains six independent contractor agreements between Sky Down and its various workers. The independent contractor agreements contain a non-compete clause that prohibits workers from working for competing companies within 100 miles of Sky Down. Denise Janes stated in her deposition that she prints off a new independent contractor agreement as new workers come in to pack parachutes or act as tandem instructors for Sky Down. At trial, a packer and an instructor each testified to signing the agreement, with the instructor adding that he knew he was working as an independent contractor. Another worker also testified that he never considered himself an employee of Sky Down despite working as a skydiving teacher and tandem instructor. Skydown submitted 11 IRS 1099 forms as well as evidence of a few business entities created by the workers. Four workers claim to have established LLCs, which they used when working for Sky Down: Lil John's Skydiving, LLC, owned by John Alcorn; Allen Danes, doing business as Adrenaline Adventures; Brian Singer, conducting business as Complete Construction Services, LLC; and Derek Sluder, who received a 1099 form for his business Para Sluder, LLC.

The Janes described many of the workers they utilized as "nomadic" or "unreliable" because they have previously left the state or country, pursued other professions, or are generally difficult to contact for jumps. For instance, "a common skydiver" was described as one without a

house, car, or cell phone, making him difficult to find or reach. Two of the Janes' workers left the country: Louis Braker moved to China and Mike Sousa moved to Portugal. The Janes are "not sure if [Sousa]'s going to come back." Sky Down's tandem instructors have also provided services "at other drop zones," effectively "travel[ing] with the sun" to provide jumps throughout the year as Sky Down's business slows over the winter months in Idaho.

The Commission began investigating Sky Down on July 8, 2016, based on an "anonymous tip" that Sky Down lacked workers' compensation insurance. The investigator contacted Paul Janes and Sky Down's legal counsel as part of its investigation, with both maintaining that the workers' compensation insurance was not required because the workers were all independent contractors. Investigators spoke with Cody Butikofer, a tandem instructor, on one of their visits to Sky Down. Butikofer initially pretended to be somebody else before admitting his true identity. He then told the investigators that the Janes "require[] him and the other instructors to file 1099s and has told them that they are independent contractors." Butikofer also told the investigators that injuries are "on us, just part of the job," that he could call in another tandem instructor to sub for him on a flight, and that he was paid by Sky Down each Sunday for the jumps he had completed over the week. When asked if Butikofer had ever signed an independent contractor agreement, he said "no." After this meeting, the investigator concluded that "an Employer/Employee relationship exists with [Sky Down]." The next day, on December 28, 2016, the Industrial Commission notified Sky Down it was in violation of Idaho's Workers' Compensation Law and demanded proof of insurance.

Sky Down maintained that its instructors and packers are "independent contractors," making workers' compensation insurance unnecessary. On January 13, 2017, Sky Down provided the Commission with copies of six independent contractor agreements for the following: Allen Danes (Adrenaline Adventures), Cody Butikofer, Brian Singer, John Alcorn (Lil John's Skydiving, LLC), Eric Dobbins, and Dylan Bell. Five of the independent contractor agreements are dated January 1 with a different year filled-in: Allen Danes (2014), Cody Butikofer (2016), Brian Singer (2015), John Alcorn (2014), and Dylan Bell (2015). The contract with Eric Dobbins is dated June 9, 2017. These are the only independent contractor agreements in the record. After Sky Down provided copies of these independent contractor agreements, the Commission sent a second letter to Sky Down, notifying it that the Commission intended "to assess penalties in the amount of $2,950.00 as a result of [its] failure to carry workers'

4

compensation insurance from November 4, 2016 through March 1, 2017." A subsequent letter calculated the penalty at $3,475 and warned of a potential civil suit if Sky Down remained in violation.

On April 4, 2017, Sky Down filed a Notice of Tort Claim against the Industrial Commission for "negligent and reckless" threats to file a lawsuit. In response, the Industrial Commission filed this lawsuit against Sky Down and the Janes on April 27, 2017, alleging that the defendants were operating a business without the requisite workers' compensation insurance coverage for its employees. The Commission sought monetary fines totaling $3,475 as well as injunctive relief. The magistrate court held a one-day trial on February 5, 2018. A few weeks later, on March 19, the magistrate court announced its decision for Sky Down from the bench, and issued a final judgment dismissing the Commission's complaint with prejudice on finding that both the tandem instructors and parachute packers were independent contractors.

On April 18, 2018, the Industrial Commission filed a motion for a new trial, arguing that there was new evidence because Butikofer had contacted the Commission's counsel after the trial and confessed that his testimony "had been false and misleading." The key piece of information the Commission relied on for this motion was Butikofer's new affidavit, in which he alleged that all of the independent contract agreements were backdated and signed at the request of Sky Down *after* the Commission warned the company it was in violation of Idaho's Workers' Compensation Law. Butikofer also explained in his affidavit that Sky Down had a high level of control over the tandem instructors and each jump. After reviewing this motion, the magistrate court concluded that

> [The Industrial Commission] is unhappy with this Court's decision. That does not make it wrong. [The Commission's] allegations of error are nothing more than their own interpretation of the evidence presented as how they wish this Court had viewed it. Taking apart findings word by word and out of context does not constitute "setting forth with particularity the factual grounds for the motion" as required by I.R.C.P. 59(a)(2). . . . This [c]ourt determines there was sufficient evidence to support the decision.

The Industrial Commission then appealed the final judgment of the magistrate court and its denial of the motion for a new trial. The district court affirmed the magistrate court, holding that (1) the judge correctly applied the law, (2) there were no ambiguities in the findings, and (3) Butikofer's affidavit—standing alone—was wholly insufficient to warrant a new trial. The Commission timely appealed.

5

## II.    STANDARD OF REVIEW

While we freely review questions of law, determining whether a worker is an employee or independent contractor is a question of fact. *Lopez v. Vanbeek Herd P'ship*, 161 Idaho 930, 932, 393 P.3d 590, 592 (2017); *Hernandez v. Triple Ell Transp., Inc.*, 145 Idaho 37, 40, 175 P.3d 199, 202 (2007). As such, our appellate review is limited to determining whether there is substantial and competent evidence to support those findings of fact. *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013). "Substantial and competent evidence is 'relevant evidence that a reasonable mind might accept to support a conclusion.' " *Huff v. Singleton*, 143 Idaho 498, 500, 148 P.3d 1244, 1246 (2006) (quoting *Jensen v. City of Pocatello,* 135 Idaho 406, 412, 18 P.3d 211, 217 (2000)). In reviewing the record, we do not consider witnesses' credibility on appeal nor do we reweigh the evidence. *Id.* at 501, 148 P.3d at 1247.

In addition, we do not directly review a magistrate court's determination; rather, we are procedurally bound to affirm or reverse the district court's decision. *Pelayo*, 154 Idaho at 859, 303 P.3d at 218. As this Court has previously articulated:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Id.* at 858, 303 P.3d at 217 (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)).

## III.    ANALYSIS

### A. The district court erred in concluding there was substantial and competent evidence to support the magistrate court's findings.

The Industrial Commission argues that several important findings of the magistrate court were not supported by substantial and competent evidence in the record, each of which constitutes reversible error. The Commission also argues that several legal conclusions were incorrect as a matter of law and should be reversed. We agree. The district court incorrectly applied the four-factor employment test to conclude that the parachute packers and tandem instructors were independent contractors, and erred in concluding there was substantial and competent evidence to support the magistrate court's findings.

6

Private employers have a statutory duty to insure against their potential liability for job-related injuries. *See* I.C. § 72-301. Because "[c]overage under Idaho's workers' compensation laws depends on the existence of an employer-employee relationship," a private employer is not required to provide workers' compensation insurance for independent contractors. *See Shriner v. Rausch*, 141 Idaho 228, 231, 108 P.3d 375, 378 (2005). Whether a worker is an independent contractor or employee is a question of fact, determined "on a case-by-case basis from full consideration of the facts and circumstances." *Id.* Idaho Code section 72-102(12) defines "employee" as "synonymous with 'workman' and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer." While an "independent contractor" is "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the *result* of his work only and not as to the *means* by which such result is accomplished." I.C. § 72-102(17) (emphasis added).

The test for determining whether a worker meets the statutory definitions of employee or independent contractor is one of control. A court must determine "whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results." *Shriner*, 141 Idaho at 231, 108 P.3d at 378 (quoting *Kiele v. Steve Henderson Logging,* 127 Idaho 681, 683, 905 P.2d 82, 84 (1995)). This Court utilizes a four-factor balancing test to determine whether the "right to control" exists: (1) direct evidence of the right to control the employee; (2) the method of payment, including whether the employer withholds taxes; (3) whether the employer or worker furnishes "major items of equipment;" and (4) whether there is a right to terminate the employment at will and without liability. *Hernandez v. Triple Ell Transp., Inc.*, 145 Idaho 37, 40, 175 P.3d 199, 202 (2007); *Livingston v. Ireland Bank*, 128 Idaho 66, 69, 910 P.2d 738, 741 (1995). None of these factors alone is controlling—the weight afforded to each must vary with the specific circumstances of the individual case. *Hernandez,* 145 Idaho at 40, 175 P.3d at 202; *Matter of Hanson*, 114 Idaho 131, 133, 754 P.2d 444, 446 (1988). However, "when a doubt exists as to whether an individual is an employee or an independent contractor under the Workmen's Compensation Act, the Act must be given a liberal construction in favor of finding the relationship of employer and employee." *Burdick v. Thornton*, 109 Idaho 869, 871, 712 P.2d 570, 572 (1985).

Direct evidence of the right to control includes factors that demonstrate an employer's asserted direction and control over the worker. These factors may include—but are not limited to—instructions and guidance to control the manner and method of executing the work, and control of the worker's time and scheduling. *See Kiele*, 127 Idaho at 684, 905 P.2d at 85; *Roman v. Horsley*, 120 Idaho 136, 138, 814 P.2d 36, 38 (1991). Like the other components of this test laid out in *Kiele*, the facts and weight of each factor will vary with the circumstances of every case. *Hernandez,* 145 Idaho at 40, 175 P.3d at 202.

1. **Treating the tandem instructors' bodies as major items of equipment was an erroneous application of the right to control test.**

The magistrate court misapplied the right to control test when it found that the tandem instructors own bodies were evidence that they supplied vital tools to each jump. Indeed, the main issue on appeal from the Commission concerns the magistrate court's finding stated over the bench: "The human bodies of the instructors are no less a piece of equipment than the airplane that took them up to the appropriate altitude." As the magistrate court elaborated at the hearing:

> Who supplied the body the customer rides with while plummeting 16,000 feet towards the earth? The instructor has ahold of that person.

> Indeed, an airplane is an expensive piece of equipment; however, it means nothing to the customer without some well-trained individual who decided to show up that day and ferry him back to earth. That well-trained individual sets his own time as to whether or not to show up. He determines how he and the customer will make it from the plane back to earth, and he incorporates all of his knowledge and skills into a method of getting the end result accomplished. The end result is a safe landing and a happy customer.

Rather than correcting this error of law on appeal, the district court instead attempted to reinterpret the magistrate court's finding, explaining that the court was actually referencing the skydiver's skill as the provided equipment. The district court explained that when considering these conclusions as a whole,

> the magistrate appears to be observing [without expressly stating] is that it is the skill and experience of the individual instructor that is the essential element of the employment rather than any relationship between the individual and the equipment being provided by the company. Examining or considering a worker's skill and experience in the task to be performed is not synonymous with finding that said worker provided their "body" as equipment.

Both courts erred in this analysis.

8

In *Matter of Hanson*, this Court held that "the worker's body is not a major item of equipment within the meaning of the third element of the 'right to control' test." 114 Idaho at 134, 754 P.2d at 447. That case addressed the Industrial Commission's acceptance of a referee's finding that an exotic dancer "supplied the major items of equipment (i.e., their bodies, skills, and costuming)." The Court explained that "equipment" includes tools, machinery, specialized clothing, "and other similar items necessary for the worker to accomplish the task to be performed." *Id.* The Court then gave the example of a plumber, who would usually bring along tools, parts, and any special equipment to complete repairs and services. *Id.* Despite the fact that a plumber also supplies his body to complete the work—which is true regardless of whether he acts as an employee or independent contractor—"placing emphasis on the fact that the dancers' bodies were 'major items of equipment' was an erroneous application of the test." *Id.*

Notwithstanding the training and expertise of the tandem jumpers, it cannot be seriously contested that the most essential pieces of equipment to Sky Down's business were the airplanes and parachutes. While the tandem instructors may have provided some of their own personal equipment, i.e., altimeters, goggles, and cameras, each of those tools was practically useless until an airplane delivered the jumpers to a designated point in the sky and the parachute allowed them to safely descend in tandem back to the hangar. Indeed, the statement that supplying the airplane and parachute systems "means nothing to the customer" is manifestly incorrect considering the absolute necessity of both items for successfully completing each jump.

The simple reality is that every worker brings their body to the job to some degree: an administrative assistant's fingers type through the day, a carpenter's arm nails a board into place, and a tandem skydiver leaps out of a plane with a customer strapped to his or her body. The fact that workers use their bodies skillfully is obviously important, but it does not make their bodies "major items of equipment." Rather, the equipment would be the keyboard, hammer, and in this case, the airplane and parachute. With so few jobs capable of completion without a body to manipulate the equipment, treating the body as equipment is unpersuasive as an example of "furnishing equipment." Because this remains true whether the worker is an employee or an independent contractor, a worker's use of their own body does not meaningfully contribute to the analysis of whether a worker is an employee or independent contractor. *See id.*

Accordingly, the magistrate court misapplied this test and the district court erred in attempting to reconstruct that analysis with its generous reinterpretation. We remand the case for

9

reconsideration of the factual findings and conclusions without consideration of the tandem instructors' bodies as a major piece of equipment. *See id.*

## 2. The failure to withhold taxes is not automatically determinative of independent contractor status.

Much emphasis was placed below on the fact that Sky Down did not withhold taxes for any of its alleged employees. Although this can be a factor suggesting that they were independent contractors, it is not automatically determinative. This test "generally refers to whether income and social security taxes are withheld from a person's wages," which is customary in an employer-employee relationship. *Livingston*, 128 Idaho at 69, 910 P.2d at 741. Generally, when an employer does not make provisions for withholding taxes and social security, this "points toward independent contractor status," but that still "is not necessarily a determining factor." *Roman*, 120 Idaho at 138, 814 P.2d at 38; *Burdick*, 109 Idaho at 872, 712 P.2d at 573. As we held in both *Roman* and *Burdick*, the trial court can find the method of payment to be a neutral factor even when the record shows the employer failed to provide for the withholding of taxes, social security, and so on. *Roman*, 120 Idaho at 138, 814 P.2d at 38 ("[T]he fact that there was no withholding of taxes did not diminish the neutrality of the payment factor."); *Burdick*, 109 Idaho at 872, 712 P.2d at 573.

Here, each of the parachute packers and tandem instructors—as well as the pilot, rigger, and anyone else who received compensation from Sky Down—received an IRS 1099 form for non-employee compensation. Some of the workers also received substitute compensation in the form of skydiving jumps, accumulating either a debit or credit of sport jumps with Sky Down. Generally, the failure to withhold taxes and social security points toward an independent-contractor relationship. However, the mere presence of a 1099 form does not outweigh the supply of airplanes and parachutes, nor does it singlehandedly tip the scale. On remand, the trial court will have to analyze whether Sky Down's method of payment to the tandem instructors and parachute packers weighs in favor of independent-contractor status, an employer-employee relationship, or if the presence of 1099s is neutralized by other payment factors.

## 3. Based on the totality of the record, the six independent contractor agreements in this case are not substantial evidence of independent contractor status.

The magistrate court placed great weight on Sky Down's production of independent contractor agreements for its workers as evidence of the workers' independent contractor status.

10

However, the substance of the agreements undermine the magistrate court's analysis. First, while the right to terminate the agreement at will and without liability can indicate independent-contractor status, such restrictions may also indicate an employer-employee relationship. *See Olvera v. Del's Auto Body*, 118 Idaho 163, 166, 795 P.2d 862, 865 (1990). Second, while the magistrate court correctly concluded that the non-competition clause of the independent contractor agreement created liability and restricted workers from terminating their relationship with Sky Down at will, the court erroneously concluded that fact "supports the notion that this arrangement is not an employee/employer relationship." Although non-competition clauses are permitted for independent contractors under Idaho Code section 44-2701, such a provision is more indicative of the type of control an employer typically exercises over an employee. The noncompete agreements at issue here restricted any tandem instructor's or parachute packer's ability to terminate his employment with Sky Down and it eliminated their opportunity to continue skydiving work within 100 miles of Sky Down for 18 months following the contract's termination. Again, without further evidence relative to the unique circumstances of this case, this degree of control seems more indicative of an employer-employee relationship.

Furthermore, we are troubled by the characteristics of the independent contractor agreements themselves. First, five of the agreements are dated January 1, but with a different year inserted in the blank for each worker. It is unlikely that this would have occurred considering Denise Janes's statement that she prints off the new contracts as new workers come in, which would mean every worker started on January 1. Given the fact that winter is Sky Down's slowest season, this seems to be highly improbable coincidence. Second, one of the agreements was signed with the business name "Adrenaline Adventures" and is dated January 1, 2014, a full 17 months before that business name was created with the Idaho Secretary of State. Third, in the original trial record, Butikofer told the Industrial Commission investigators in December 2016 that he had never signed an independent contractor agreement with Sky Down, a statement contrary to his agreement dated January 1, 2016. Such evidence raises grave doubts as to the agreements' authenticity. Because the magistrate court failed to adequately address these concerns, we cannot conclude that such evidence provided a substantial basis for concluding that these agreements established that the workers were not employees.

### 4. The magistrate court failed to make findings concerning the parachute packers.

11

The magistrate court failed to apply the requisite four-factor test to all the workers at Sky Down. Although the magistrate court completed that analysis for the tandem instructors, it conducted no separate analysis for the parachute packers, most of whom were not qualified instructors. The magistrate court simply concluded that *all* workers at Sky Down were independent contractors. While there may naturally be some overlap in the facts, the parachute packers were separate and distinct workers from the tandem instructors. For example, the packers submitted pack sheets instead of jump sheets, completed different tasks, and had different training and qualifications. Because the magistrate court failed to explain how it reached the conclusion that the parachute packers were independent contractors, this finding was not based on substantial and competent evidence. On intermediate appeal, the district court again tried to reconstruct the magistrate court's analysis, but this only led to additional factual findings unsupported by the record. Accordingly, we must reverse and remand for a new trial with instructions for the court to analyze whether the tandem instructors *and* parachute packers are employees or independent contractors.

5. **On remand, the magistrate court will need to reexamine the applicability of Idaho Code section 72-212(6) in light of this Opinion.**

The Commission also argued that the magistrate court incorrectly applied a statutory exemption in I.C. § 72-212(6) to the tandem instructors, explaining that some were exempt from worker's compensation insurance "[t]o the extent that working members of limited liability companies were performing duties for Sky Down." Idaho Code section 72-212 sets forth multiple exemptions from the worker's compensation law, including the "employment of a working member of a partnership or a limited liability company." I.C. § 72-212(6). While this exemption clearly applies to both Paul and Denise Janes who worked for Sky Down and were the only members of Sky Down, LLC, it is unclear from the record whether the technical anomalies noted in this Opinion concerning the other entities created by the other tandem instructors and parachute packers would permit them to claim the exemption. Therefore, this issue will need to be reexamined on remand.

6. **Because the magistrate court's bench ruling failed to cite substantial and competent evidence for its findings and misapplied the right to control test, the district court erred in affirming the magistrate court.**

Altogether, the record below lacks substantial and competent evidence to support the magistrate court's conclusion that the parachute packers and tandem instructors were

independent contractors. Additionally, the magistrate court misapplied the right to control test. Therefore, the district court erred in affirming the magistrate court's findings of fact and conclusions of law. Ultimately, although we give deference to the factfinder, those findings must be based on substantial evidence correctly applied to the law. We hold that the cumulative effect of the factual and legal errors tipped the balancing test improperly against the Industrial Commission. Despite the requirement to give the Workmen's Compensation Act a liberal construction in favor of an employer-employee relationship where a doubt exists, *Burdick*, 109 Idaho at 871, 712 P.2d 570, the exact opposite took place in this case—the evidence was viewed and considered liberally and creatively in a manner which improperly weighted the evidence in favor of independent-contractor status. Thus, we reverse the district court's decision and remand with instructions to remand the case to the magistrate court for a new trial. The magistrate court must balance each of the four factors to determine their relative weight and importance— considering all the facts and circumstances of the case—and then make its determination of whether both the tandem instructors and parachute packers are employees or independent contractors. Because of this ruling, we need not address the Commission's final issue concerning its motion for a new trial.

### B. Sky Down is not entitled to attorney fees pursuant to Idaho Code sections 12-120(1) and 12-117.

Sky Down argues that it is entitled to attorney fees on appeal under Idaho Code sections 12-120(1) and 12-117 because the Industrial Commission's "overzealous and frivolous prosecution of this matter placed a signification [*sic*] financial and emotional burden" on them. Both statutes only award attorney fees to the prevailing party. Sky Down, however, is not the prevailing party. Consequently, it is not entitled to attorney fees on appeal.

## IV. CONCLUSION

For the foregoing reasons we reverse the decision of the district court and remand with instructions to remand the case to the magistrate court for a new trial. Costs are awarded to the Industrial Commission.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**