48 P.3d 1238

Jerry HUGHEN, Claimant–Appellant,

v.

HIGHLAND ESTATES, Employer, and State of Idaho, Department of Labor, Respondents.

No. 27442.

Supreme Court of Idaho, Boise, March 2002, Term.

June 5, 2002.

Jerry Hughen, Declo, pro se.

William J. Hines, Boise, for respondent.

TROUT, Chief Justice.

## I. NATURE OF THE CASE

This is an appeal from the Industrial Commission's (Commission) ruling denying Jerry Hughen (Hughen) unemployment benefits following his termination of employment with employer Highland Estates L.C. (Highland). We affirm.

## II. FACTUAL AND PROCEDURAL HISTORY

Hughen began working for Highland in July of 1997. During most of his employment with Highland he was a food service manager. In March, 2000, Hughen left Highland to accept a higher paying job, but he returned to Highland in July, 2000.

Pat Gooding (Gooding), who was hired by Highland as their regional director beginning on September 4, 2000, testified that on Octo-

ber 20, 2000, Hughen told her: "I'm quitting, so you better get an ad in the paper [for his replacement]," but refused to give her an exact date that he was planning to quit. Hughen testified that he asked Gooding to hire more cooks and told her that he "had been thinking about quitting" and if they were not going to [hire more cooks and waitresses] then [he] was going to quit." Gooding testified she immediately "began calling contacts" to look for a replacement for Hughen, although she was unsuccessful in her attempts. A co-employee, Yolonda Granados, testified that following this conversation, Hughen told her that he had already quit.

On October 24, 2000, Hughen injured his back at work while he was putting some frozen chicken breasts into a freezer. Hughen sought medical attention, and the doctor advised him to take three days off work, which he did. On October 27, 2000, Hughen returned to work with a note from his doctor stating that he could return to work at his regular duty. On that same day, Hughen injured his back again while he was washing dishes. He went to his doctor again, returning to work around 6:00 p.m. on the same day, and he left a note from his doctor on the administrator Valerie Koyle's (Koyle) desk.

On the morning of October 30, 2000, Koyle called Hughen at home and told him that Highland wanted him to temporarily work from 9:00 a.m. to 5:00 p.m., Tuesday through Friday, doing restricted work not involving physical exertion, at a reduced wage. Hughen objected to the reduced wage, but after telephoning the labor board, he called her back and agreed to the arrangement. Hughen went to work the next morning, Tuesday, October 31, 2000, at 9:00 a.m. and he worked on the assignment he had been given until about 10:30 a.m., at which time he completed all of the work that he believed he was allowed by state law to do (he testified that he believed he was not allowed to work on recipes that Koyle had left for him, which needed to be done by a certified dietician, a registered dietitian, or a nutritionalist). Because he did not have any more work to do and Koyle was not available, Hughen left a note on Koyle's desk telling her that he had

left and asking her to call him if she needed him. Koyle did not telephone him. Hughen testified that he called Highland several times and left messages with personnel each time that he called. Koyle testified she did not receive any messages that Hughen had called. Hughen did not go to work the next morning, Wednesday, November 1, 2000, but he did go in that day to see his wife who was working for Highland as a temporary waitress. He and Koyle spoke briefly, but neither mentioned his working.

Also on November 1, Highland listed an opening with job service for Hughen's job. On Sunday, November 5, 2000, Koyle and Hughen saw each other at a church function and spoke briefly, but again did not discuss Hughen coming back to work. Koyle testified she left a message on Hughen's answering machine on November 13, 2000, that he would need a doctor's release forty-eight hours before returning to work, and that he would have to talk to Gooding about returning to work because they had already hired his replacement from the job services listing. On November 16 or November 17, 2000, Hughen brought the work release in to Highland. Hughen next came in on November 20, 2000, at which time Gooding told him she had hired a replacement for him and he should not return to the building.

Hughen filed for unemployment compensation and after an initial investigation, his claim was approved on December 14, 2000. Highland appealed and a telephone hearing was held on January 24, 2001. On February 1, 2001, the Appeals Examiner reversed the approval of Hughen's claim, ruling he was not eligible for unemployment benefits because he had voluntarily quit his job when he did not return to work during his modified work schedule (beginning November 1, 2000) and quit without good cause. Hughen appealed that ruling to the Industrial Commission, which adopted the Appeals Examiner's Findings of Fact with some modifications and upheld the Appeals Examiner's ruling. From that decision, Hughen appealed to this Court.

## III.  STANDARD OF REVIEW

■ When this Court reviews a decision from the Industrial Commission, it exercises

free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). The Industrial Commission's conclusions regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court does not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

## IV. ANALYSIS

### A. Due Process

Hughen asserts he was denied due process because he was unable to tell adequately his side of the story and could not afford to hire counsel to represent him. In civil cases, "where personal liberty is not threatened, there exists a rebuttable presumption that the claimant is not entitled to appointed counsel." *State v. One 1990 Geo Metro, VIN 2C1MR246L6012694*, 126 Idaho 675, 683, 889 P.2d 109, 117 (Idaho Ct.App. 1995) (citing *Lassiter v. Department of Social Services*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640, 649 (1981)). Hughen presented no evidence to overcome this presumption. Thus, although Hughen was certainly free to hire counsel at his expense, the State's failure to appoint him counsel did not violate his due process rights.

### B. Substantial and Competent Evidence to Uphold the Findings of Fact

The disputed material fact in this case is whether Hughen quit or was terminated, because the pertinent statutes provide that an employee who voluntarily resigns without good cause may not receive unemployment benefits. I.C. §§ 72–1351(2), 72–1366(5) (2001). There was testimonial evidence that Hughen voluntarily resigned. Hughen himself testified that on October 30, 2000, Koyle told him that he would work from 9:00 a.m. to 5:00 p.m., Tuesday through Friday, although he later stated that she did not give him specific hours of work. By not returning to work on November 1, 2000, when he was aware that he was scheduled to work could be interpreted as Hughen's quitting. This is especially true in light of the fact that Hughen testified during the telephone hearing he had previously indicated to Gooding that he intended to quit, and in light of his co-worker's testimony that Hughen said he had already quit on October 20, 2000.

Based on the foregoing, and even accepting Hughen's testimony as being truthful, there is substantial and competent evidence that Hughen voluntarily quit without good cause rather than that he was terminated. *See Doran v. Employment Security Agency*, 75 Idaho 94, 96, 267 P.2d 628, 630 (1954) (placing the burden on the employee in times of absence to keep the employer informed of his intentions of returning to work). We therefore affirm the Industrial Commission's denial of Hughen's unemployment compensation benefits.

### C. Attorney's Fees

Highland seeks attorney's fees on appeal pursuant to Idaho Code § 12–121, and I.R.C.P. 54. Generally, an award of attorney's fees is appropriate on appeal under § 12–121 when the appeal has been brought or defended frivolously, unreasonably, or without foundation. *See Appel v. LePage*, 135 Idaho 133, 15 P.3d 1141, 1147 (2000). Because the original appeals examiner ruled in favor of Hughen, it was not frivolous, unreasonable, or without foundation for him to pursue this appeal. We therefore decline to award Highland attorney's fees on appeal.

## V. CONCLUSION

On the basis of the foregoing, we affirm the order of the Industrial Commission and award costs to Highland as the prevailing party on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.