## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 33611

GILTNER, INC., a division of Progressive )
Logistics, Inc., )
                          )
       Employer-Appellant, )      **Twin Falls, November 2007**
                          )
v. )      **2008 Opinion No. 33**
                          )
IDAHO DEPARTMENT OF COMMERCE )      **Filed: February 29, 2008**
AND LABOR, )
                          )      **Stephen W. Kenyon, Clerk**
       Respondent. )
                          )
_____ )

Appeal from the Industrial Commission.

Decision of Industrial Commission, <u>affirmed.</u>

Fredericksen, Williams, Meservy & Lothspeich, LLP, Jerome, for appellant. John B. Lothspeich argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Katherine Takasugi argued.

_____

BURDICK, Justice

The Idaho Department of Commerce and Labor determined that certain drivers employed by Appellant Giltner, Inc. were covered employees for which it was liable for unpaid unemployment insurance taxes and penalties. The Idaho Industrial Commission affirmed that decision. Giltner appeals that decision. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Giltner, Inc. (Giltner) is a transportation company located in Jerome, Idaho, and operating in a number of states. Giltner engages two types of drivers to deliver goods and merchandise to its customers. First, Giltner employs "company drivers" who are paid by the mile and receive traditional benefits. Second, Giltner engages "owner/operator drivers" who are paid a set

1

percentage of the load delivered. There are two types of "owner/operator drivers," those who operate under their own Department of Transportation (DOT) authority and those who operate under Giltner's DOT authority (reclassified drivers). This second class of "owner/operator drivers" are the subject of this appeal.

Each of the reclassified drivers entered into two agreements with Giltner: a "Contractor Operating/Lease Agreement" and an "Equipment Lease Agreement" (collectively lease agreements). Giltner drafted both of these documents, and neither was subject to negotiation.

At some point, a now-reclassified driver filed a claim for unemployment insurance benefits against Giltner. When the Respondent, State of Idaho, Department of Commerce and Labor (the Department), was processing this claim, it discovered that Giltner had not reported any wages for that driver. This led the Department to conduct an audit of Giltner, covering the fourth quarter of 2002 through the fourth quarter of 2003. A tax auditor found that the remuneration received by the reclassified drivers was wages for covered employment and imposed a tax liability of $50,832.24 for the audit period. Giltner filed a timely appeal of the tax liability determination to the Department. An Appeals Examiner for the Department conducted a three-day hearing. It then affirmed the finding of unemployment tax liability. Giltner timely appealed that decision to the Idaho Industrial Commission (the Commission). The Commission conducted a *de novo* review of the record, but did not conduct a hearing or take additional evidence. The Commission then affirmed the Department's finding of unemployment tax liability. Giltner now appeals that decision to this Court.

## II. STANDARD OF REVIEW

"On appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions, but will not disturb findings of fact if they are supported by substantial and competent evidence." *Steen v. Denny's Rest.*, 135 Idaho 234, 235, 16 P.3d 910, 911 (2000). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prods.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Excell Constr., Inc. v. State, Dept. of Labor*, 141 Idaho 688, 692, 116 P.3d 18, 22 (2005) (citing *Hughen v. Highland Ests.*, 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002)). We

2

will not re-weigh the evidence or consider whether we would have drawn a different conclusion from the evidence presented. *Id*.

### III. ANALYSIS

Giltner argues the Commission incorrectly used evidence of compliance with state and federal law to indicate direction and control when determining whether the reclassified drivers were its employees, and that the Commission erred when it determined the drivers were not engaged in an independent trade. Giltner also maintains that the reclassified drivers were not similarly situated, thus it was error for the Commission not to consider each driver individually. Next, Giltner argues that the Commission abused its discretion by not hearing oral argument on appeal and not taking new evidence. Finally, Giltner seeks attorney fees on appeal. We will address each issue in turn.

### A. The reclassified drivers were Giltner's employees.

Idaho's Employment Security Law provides assistance for workers who face unemployment through no fault of their own. I.C. § 72-1302. Employers are obligated to pay unemployment insurance taxes based on the wages they pay to employees engaged in "covered employment." *John L. King, P.A. v. State, Dept. of Empl.*, 110 Idaho 312, 313, 715 P.2d 982, 983 (1986). These employer contributions finance a trust fund that supports the unemployment insurance system. *Id*. When interpreting social legislation, such as the Employment Security Act, "exemptions from coverage are narrowly construed." *Id*.

> Once it is shown that a worker received remuneration from a putative employer for performing services, that worker will be found to have been engaged in covered employment, "subject to the putative employer showing that an exemption applies." *Beale v. Dept. of Employment*, 131 Idaho 37, 41, 951 P.2d 1264, 1268 (1997). "[T]he term 'covered employment' is an 'expansive term' and 'sweeps within its purview employees and independent contractor alike.'" *Id*. (quoting *Software Assoc., Inc. v. Department of Employment*, 110 Idaho 315, 316, 715 P.2d 985, 986 (1986)). "[T]he status of independent contractor is not enough to avoid coverage." *King*, 110 Idaho at 314, 715 P.2d at 984 (quoting *Swayne v. Dept. of Employment*, 93 Idaho 101, 104, 456 P.2d 268, 271 (1969)).

*Excell Constr., Inc.*, 141 Idaho at 694, 116 P.3d at 24.

In order to merit an exemption from the presumption that services for remuneration are covered employment, the putative employer must demonstrate two things:

> (a) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact; and

(b) That the worker is engaged in an independently established trade, occupation, profession, or business.

I.C. § 72-1316(4). Therefore, in order to overcome the presumption of covered services, the putative employer must first demonstrate that the worker was free from employer control and then that the worker was engaged in an independently established trade, occupation or business.

As to the first prong, the putative employer must show that "the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact[.]" I.C. § 72-1316(4)(a). "The appropriate test in making this determination considers whether the putative employer has control over the details of the work, the manner, method or mode of doing the work, and the means by which the work is to be accomplished, as contrasted with the results of the work." *Excell Constr., Inc.*, 141 Idaho at 694-95, 116 P.3d at 24-25 (citing *Beale v. State, Dept. of Empl.*, 131 Idaho 37, 42, 951 P.2d 1264, 1269 (1997); IDAPA 09.01.35.112.03). Additionally, the freedom from control must exist in theory and in fact. *Beale*, 131 Idaho at 42, 951 P.2d at 1269; IDAPA 09.01.35.112.03.

The Commission found that Giltner had not met its burden of showing that the reclassified drivers were free from its control. However, Giltner argues that a review of the IDAPA 09.01.35.112.03 factors should be limited to the voluntary actions of the putative employer—neither requiring a worker to comply with federal and state law nor compliance with insurance requirements can be competent evidence of control.[1] Giltner contends that *National Trailer Convoy, Inc. v. Employment Security Agency of Idaho*, 83 Idaho 247, 253, 360 P.2d 994, 997 (1961), controls here and does not allow consideration of a putative employer requiring workers to meet mandatory regulations.

In *National Trailer* this Court examined whether the drivers for the company were covered employees for employment security contribution purposes. The Court found that the drivers were not employees of the trucking company, and wrote "[r]equirements that truck and driver meet Interstate Commerce Commission standards, and existence of the road patrols, point toward compliance with governmental regulations, and are not indicia of an employer-employee relationship." *Natl. Trailer Convoy, Inc.,* 83 Idaho at 253, 360 P.2d at 997. Giltner argues that it was error for the Commission to consider that Giltner required its owner-operators to comply

---

[1] While Giltner argues that this Court cannot consider compliance with insurance requirements, it provides no authority for that proposition, and we, therefore, will not address that argument.

with federal law as evidence of control and direction. Additionally, we recently addressed a similar issue in *Hernandez v. Triple Ell Transport, Inc.*, 2007 WL 4531509 (Dec. 27, 2007). There, we once again determined adherence to federal law governing interstate trucking cannot be used as evidence to show control over a driver. *Id*. at \*4.

Therefore, the Commission erred in finding that Giltner's adherence to federal rules and regulations was evidence of control over the reclassified drivers. Such evidence cannot be used when analyzing the control prong of I.C. § 72-1316. Furthermore, there was insufficient evidence otherwise demonstrating control.

Nonetheless, our analysis does not end there. A putative employer must demonstrate both portions of I.C. § 72-1316(4) to establish that the worker was not engaged in covered employment. Here, the reclassified drivers were not "engaged in an independently established trade, occupation, profession, or business." All of the reclassified drivers operated under Giltner's DOT authority. They had no authority to operate without this; they were solely dependent on Giltner's DOT authority to haul goods in interstate commerce. Therefore, as a matter of law, they could not be engaged in an independently established trade, occupation, profession or business.[2] They were necessarily Giltner's employees for purposes of Idaho's Employment Security Law. Thus, we affirm the decision of the Commission.

## B. The reclassified drivers were similarly situated.

Giltner argues that the Commission erred because it did not reach individualized findings as to each reclassified driver. Under Idaho law, employer liability for unemployment insurance taxes is assessed for each individual worker. I.C. § 72-1316; *Excell Constr., Inc*., 141 Idaho at 696, 116 P.3d at 26. However, when determining covered employment, "the director may, on the basis of the available evidence, determine that other workers performing similar services for the employer are similarly situated with respect to the coverage of said services under the provision of this chapter, and that such services constitute covered employment." I.C. § 72-1353(2). In doing so, the Commission must reach individualized findings as to each group of similarly situated workers based on the legally relevant facts. *Excell Constr. Inc*., 141 Idaho at 696, 116 P.3d at 26.

---

[2] This is in contrast to *Hernandez*. There, Hernandez had his own DOT authority and Tripel Ell was merely his only client. Hernandez could at any time have terminated his agreement and gone elsewhere to haul loads in interstate commerce using his own DOT authority.

Giltner argues that "legally relevant" facts apply differently to some of the reclassified drivers; however, the record discloses that all of the reclassified drivers operated under Giltner's DOT authority. Since that fact makes the reclassified drivers Giltner's employees, it was not error for the Commission to consider all the reclassified drivers as similarly situated with respect to the covered employment inquiry.

## C. We decline to consider whether the Commission abused its discretion by not allowing argument or taking additional evidence.

Giltner contends that the Commission abused its discretion by denying it a hearing and an opportunity to present additional evidence. However, Giltner failed to present argument or authority to support this contention. It is well established that this Court will not consider issues not supported by argument or authority. *See e.g. Cowan v. Bd. of Commrs. of Freemont Co.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006). Therefore, this Court will not consider this issue.

## D. Giltner is not entitled to an award of attorney fees.

Giltner seeks an award of attorney fees pursuant to I.C. § 12-117. However, that section provides an award of attorneys fees to the prevailing party only. *Mercy Med. Ctr. v. Ada Co.*, 143 Idaho 899, 903, 155 P.3d 700, 704 (2007). Since we affirm the decision below, Giltner is not the prevailing party and is not entitled to an award of attorneys fees under I.C. § 12-117.

## IV. CONCLUSION

We affirm the decision of the Commission. Additionally, it was not error for the Commission to determine that all the reclassified drivers were similarly situated. We decline to address whether it was error for the Commission to refuse to take additional evidence or hear argument in Giltner's appeal. Finally, since Giltner is not the prevailing party, we decline to award it attorney's fees. Costs to Respondent.

Chief Justice EISMANN and Justices W. JONES and HORTON, **CONCUR.**

J. JONES, Justice, concurring in part and dissenting in part.

I concur in the Court's holding (1) that the Industrial Commission erred in finding Giltner's adherence to federal rules and regulations was evidence of control over the reclassified drivers, (2) that such evidence cannot be used when analyzing the control prong of I.C. § 72-1316(4), and (3) that there was insufficient evidence otherwise demonstrating control. However, I dissent from the Court's holding that the reclassified drivers were not engaged in an independently established trade, occupation, profession, or business. In my estimation, such holding is not supported by the factual record or by this Court's precedents.

6

The Court's ruling, finding the reclassified drivers to be employees of Giltner, turns upon the second prong of I.C. § 72-1316(4), which allows services performed by a worker to be exempt from coverage under the employment security law where the worker is free from control and direction in the performance of his work, if the worker is also "engaged in an independently established trade, occupation, profession, or business." I.C. § 72-1316(4)(b). Before examining whether or not this prong was properly considered with respect to the reclassified drivers, it would be helpful to review the development of the prong and how it has previously been applied by this Court.

The independently established business prong did not have statutory standing at the time the Court decided *National Trailer Convoy, Inc. v. Employment Security Agency of Idaho,* 83 Idaho 247, 360 P.2d 994 (1961), a substantially similar case that the Court relied on here in determining the control issue. At the time *National Trailer* was decided, the employment security law called for application of the common law test to determine if an individual was an independent contractor, and therefor exempt from coverage. *National Trailer*, 83 Idaho at 251, 360 P.2d at 997. The Court defined an independent contractor "as one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done . . . ." *Id.* at 252, 360 P.2d at 997 (quoting 56 C.J.S. Master and Servant § 3(2)). An independently established business factor was part of the common law test because, according to the Court, "Among the factors to be considered are whether the contractor is carrying on an independent business . . ." *Id.*

National Trailer contracted with drivers who owned their own trucks to deliver trailer houses throughout the country. Under the agreement between the parties, the drivers were paid per trip, based on mileage and the weight and size of the trailer, plus rental hire for the truck. The record does not indicate whether or not the drivers operated under their own federal authority or that of National Trailer. This consideration played no part in the decision. The Industrial Accident Board (predecessor of the Commission) found that the drivers were covered under the employment security law.

The Court reversed the Board's finding, holding that the drivers were independent contractors. The Court determined that, "The driver's control of his route, of the garaging and upkeep of his truck, his privilege of refusing a haul, all indicate the status of an independent contractor." *Id.* at 252, 360 P.2d at 997. The Court singled out three additional factors as being

7

indicative of independent contractors status – the right to hire subordinates, ownership of major items of equipment, and whether liability attached upon termination of the relationship. *Id.* at 253, 360 P.2d 998. The Court then went on to attach significance to the mode of payment, stating, "Payment for a result or by the job is an indicia that the relationship is one of contractee and independent contractor, whereas payment for the performance of work indicates a master-servant relationship." *Id.* (quoting 56 C.J.S. Master and Servant, § 3(8)).

In 1963, the Legislature amended the employment security law to eliminate the provision exempting independent contractors, as determined under common law rules, and to substitute an exemption for services performed by an individual "in an independently established trade, business, or profession in which the individual is customarily engaged." 1963 Idaho Sess. Laws, ch. 318, p. 875. Two years later, the Legislature modified the 1963 revision to include the freedom from direction or control prong (which has been somewhat modified since that time) and to word the independently established business prong as it presently reads. 1965 Idaho Sess. Laws, ch. 214, p. 493.

This Court had an opportunity to consider the independently established business prong in *Swayne v. Dept. of Employment*, 93 Idaho 101, 456 P.2d 268 (1969), which involved the question of whether a trailer park lessee was an employee of the trailer park lessor for employment security purposes. The lessee was responsible for managing the trailer park, arranging for maintenance, and collecting rent. Rental income was divided among the lessee, the lessors, and the persons who were selling the trailer park to the lessors. The Court reversed a determination of the Industrial Accident Board that the lessee was an employee of the lessors. With regard to the independently established business prong, the Court referenced the three factors highlighted in *National Trailer*:

> Insofar as the element of whether the lessee was engaged in an independent business is concerned, several factors are important:
>
> (1) Did the lessee have authority to hire subordinates?
> (2) Did the lessee own major items of equipment?
> (3) Would either party be liable to the other for a peremptory termination of the business relationship?

*Id.* at 105, 456 P.2d at 272 (citations omitted). The Court noted that the first element was satisfied because the lease was for a going business and, "[t]hat in itself gave the lessee the right to hire subordinates in the absence of an agreement to the contrary." The lease also gave the

8

lessee the right and obligation to hire personnel for maintenance and supervision of the business. *Id.* While it was questionable whether the lessee owned major items of equipment, she did own all the equipment necessary for operation of the business. *Id.* at 106, 456 P.2d at 273. The Court noted that the right to terminate the relationship without consequence is the strongest indication that a worker is not an independent businessman. *Id.*

Two years later, the Court had the opportunity to consider *Swayne* in the context of a case quite similar to the present one. *Hammond v. Dept. of Employment*, 94 Idaho 66, 480 P.2d 912 (1971), involved two drivers, both of whom were former employees of Hammond Transfer. In 1968, the two drivers purchased their own tractors and became contract haulers for Hammond. Hammond was a company agent for Allied Van Lines and it owned and rented trailers that it leased to Allied for the transportation of household goods. Hammond had an Idaho Public Utilities Commission (PUC) permit but no Interstate Commerce Commission (ICC) permit. All shipments handled by the two drivers in question were hauled under the authority of Allied's ICC and PUC permits. *Id.* at 67, 480 P.2d at 913. While Allied scheduled loads for the two drivers, they were free to pick their route, they could arrange their own time off, they were not required to work any specific hours, they could hire assistants, and they paid all expenses. They were paid on a per-shipment basis. Both drivers did their own bookkeeper. Both drivers hauled "only on Hammond trailers through Hammond's agency agreement with Allied." *Id.*

An appeals examiner found the drivers were employees of Hammond but the Industrial Accident Board held otherwise. We affirmed the Board's decision. The Court determined that the drivers were free from direction and control in the performance of their work. With regard to the second prong of the test, the Court stated:

> In the case of Swayne v. Department of Employment, 93 Idaho 101, 456 P.2d 268 (1969), this court set down three factors to be considered in determining whether a worker is or is not engaged in an independent business. These factors are:
>
> > (1) Did the worker have authority to hire subordinates?
> > (2) Did the worker own major items of equipment?
> > (3) Would either party be liable to the other for a peremptory termination of the business relationship?
>
> In this case, in addition to being entirely free from any control whatsoever in the performance of their work, [the two drivers] had the authority to hire subordinates to help them load and unload their trailers and exercised this authority frequently. They also owned the major item of equipment used in their hauling – the tractor, and were completely responsible for all expenses on the tractor including

9

insurance, repairs and maintenance. These factors indicated that the drivers were engaged in an independent business and this indication is further strengthened by the fact that the expenses on their equipment constituted a part of their total overhead expense for which they were not reimbursed by Hammond.

Regarding the third factor, whether either party would be liable to the other for a peremptory termination of the business relationship, the record is of no assistance.

*Id*. at 68, 480 P.2d at 914-15.

We then proceed to *Dept. of Employment v. Bake Young Realty*, 98 Idaho 182, 560 P.2d 504 (1977), in which the Court reversed an Industrial Commission finding that real estate salesman operating under the brokerage of Bake Young Realty were employees. With regard to the independently established business prong the Court, after setting out the three *Swayne* factors, stated:

Subsequent cases have made it clear that the factors mentioned in *Swayne* were not intended to present the Court's exhaustive analysis, much less to institute a facile checklist for mechanical application:

". . . we have never held that the fulfillment of this third factor, or of any one factor, was a prerequisite to a finding that the worker is engaged in an independent business."

*Id.* at 186, 560 P.2d at 508 (quoting *Hammond*, 94 Idaho at 68-69, 480 P.2d at 914). The Court went on to consider and apply the three factors.

It found the first factor was inconclusive since real estate salesman generally do not hire subordinates, as they have no occasion to do so. However, the Court went on to say, "Should they care to do so . . . nothing would stand in their way." *Id.* The Court noted the appeals examiner's ruling that real estate salesman do not own major items of equipment but indicated this reading of the *Swayne* requirement was too narrow. According to the Court, "The point is not whether the salesman owns major pieces of tangible equipment for the business, but whether he incurs substantial out-of-pocket professional expenses which are not reimbursed." *Id.* at 187, 560 P.2d at 509. The Court noted that the salesman paid for their own cards, licensing fees, professional dues, and other expenses in dealing with clients, none of which expenses were reimbursed. *Id.* The Court downplayed the right to terminate the relationship without consequence, noting that one can make a stronger case for being an "independent contractor" if

10

one can point to damages that will accrue in case of default upon a formal contractual relationship. *Id.*

The Court went on to say, "No one test standing alone, except the right of control in the relationship of employer and employee, and the lack of such right in that of principal and independent contractor is wholly decisive." *Id.* (quoting *Link's Schools of Business, Inc. v. Employment Security Agency*, 85 Idaho 519, 523, 380 P.2d 506, 508 (1963)). The Court then noted that additional factors had been considered in *National Trailer*, such as the driver's control of his route, of the garaging and upkeep of his truck, his privilege of refusing a haul, and that payment was for a result or by the job. *Id.* The Court also found significant the fact that the principal did not withhold income or social security taxes and that the putative employer did not direct the hours of work. Considering all these factors, the Court determined the real estate salesman to be practitioners of an independent occupation. *Id.*

The Court again referenced the three *Swayne* factors in *J.R. Simplot Co. v. State Dept. of Employment*, 110 Idaho 762, 765, 718 P.2d 1200, 1203 (1986). The Court reversed an Industrial Commission holding that a potato loader was an employee of a processing plant because not engaged in an independently established business. The Court found it important that the potato loader had authority to, and did, hire employees and pay their compensation, satisfying the first factor. *Id.* With regard to the second factor, the Court indicated that, while Simplot supplied two major pieces of the equipment, the potato loader supplied all tools necessary for the maintenance and repair of the same. The potato loader also provided his own food, lodging and fuel. With regard to the third factor – liability upon peremptory termination of the relationship – the Court indicated that in more recent times, "it has become less and less determinative." *Id.* at 765, 718 P.2d at 1203. The Court stated, "Hence, we hold that the peremptory termination of a relationship continues to be only one of many factors to be considered, and in any case is of diminished validity standing by itself." *Id.* at 766, 718 P.2d at 1204.

What can one draw from this history that is pertinent to the controversy at hand? Perhaps most important is the fact that the Court has consistently applied the *Swayne* three factor test in considering the independently established business prong. This prong has been applied with great flexibility by the Court and has had lesser decisive effect than the control prong. (*Bake Young*). The Court generally considers the three factors, and often considers others, but no one factor is determinative. (*Bake Young*). It is not necessary that each of the three factors be

11

established in order to fulfill the independently established business prong. Even if a worker has no need to hire subordinates, so long as nothing will stand in his way of doing so, the factor might be sufficiently established. *(Bake Young)*. Even though the worker does not own the major items of equipment, it may be sufficient if he performs the maintenance and repair of the same. (*J.R. Simplot*). A worker can lease the major item of equipment, such as the trailer park in *Swayne*. The third factor plays a diminished role. (*J.R. Simplot*). The Court has consistently placed significance on a fourth factor – whether the worker incurs substantial unreimbursed expenses in carrying out the work. (*Hammond*, *Bake Young, J.R. Simplot*). In the two prior cases involving truck drivers, the question of whether the drivers were operating under the putative employer's federal authority played no discernable role. In *National Trailer*, no mention is made of the federal authority under which the drivers were operating. In *Hammond*, the drivers were found to be exempt from coverage despite the fact that they operated under the federal and state authority of Allied Van Lines, and despite the fact that both drivers hauled only on Hammond trailers through Hammond's agency agreement with Allied.

Let us now turn to the question of how the reclassified drivers stack up under the foregoing precedent. Starting with the three-factor test, the appeals examiner found that "the drivers had the right to hire other drivers," although other drivers had to meet Giltner's qualifications. Giltner correctly points out that this was because of the DOT regulations. The appeals examiner also found that drivers could hire "lumpers" – people who would load or unload the trailer at either end of the destination. The appeals examiner noted that the lumpers were paid by the drivers, who were reimbursed by Giltner.[3] The Commission adopted these findings. It would appear, then, that the reclassified drivers met the first of the three factors.

The reclassified drivers did not own the tractors. Rather, they were leasing them from Giltner. However, the appeals examiner found, "In practice, each driver was entitled to receive and, in fact, many did receive an ownership/equity interest in the equipment." The appeals examiner downplayed this practice because it was not specifically spelled out in the agreement. Further, the appeals examiner found that, "All maintenance costs, fuel costs, road taxes, etc., and any other fees or expenses incurred for the use and operation of that equipment was borne by the driver and was not reimbursed by Giltner, Inc." These findings were adopted by the

12

Commission. Based upon *Swayne*, where the lessee did not own the trailer park but owned incidental equipment necessary for operation of the business, upon *Bake Young*, where the real estate salesman did not own major items of equipment but paid the expenses incurred for carrying on their sales activities, and upon *J.R. Simplot*, where the potato loader did not own the two major pieces of equipment but took care of maintenance expenses, it certainly appears that the reclassified drivers satisfied the second factor.

The appeals examiner devotes some discussion to the third factor but it is not entirely clear what the conclusion was. The appeals examiner acknowledged that the agreement could be terminated upon 30 days notice (five days for a material breach) and that the agreement called for a final accounting for any outstanding debts or expenses. Giltner argued that it would be contractually bound to pay out any equity interest the driver had accrued in the equipment, but this argument was discounted because there was no contractual provision specifying this. If this was the practice, as the appeals examiner found, the lack of a specific written contractual provision might not stop a driver from asserting a claim for the equity. However, even if the factor was inconclusive or against Giltner, this factor has been given little weight in recent years and it has not been necessary for workers to fulfill all three factors.

The reclassified drivers met the fourth factor generally mentioned in the decisions – they incurred substantial operating expenses that were not reimbursed by Giltner. This certainly is not a usual incident of an employer-employee relationship. Looking at the method of payment, the reclassified drivers were not paid by the hour but, rather, as the appeals examiner found, they were "paid a percentage of the line haul revenue . . . [n]o deductions were made for federal or state taxes or company benefits." These are indicia of an independent occupation. *Bake Young*, 98 Idaho at 187-88, 560 P.2d 509-10; *National Trailer*, 83 Idaho at 253, 360 P.2d at 998.

The appeals examiner found that, "Each driver, in theory, had the right and ability to maintain outside business or occupations. Drivers were free to solicit, negotiate, and accept loads from independent customers and brokers. In practice, however, that was rarely, if ever, done." The appeals examiner asserted that Giltner strongly discouraged drivers from accepting loads from other customers. The record reflects that Giltner discouraged the practice because of bookkeeping problems it created. Nevertheless, the drivers had the right and ability to do so and

---

[3] However, Giltner passed that charge on to the customer. The drivers paid all of their truck and

13

whether they exercised the right and ability is beside the point. Perhaps they were content with the supply of long-hauls provided by Giltner.

It certainly seems that, based on the Commission's own findings, the independently established business prong was satisfied. However, the Commission did not use the three-factor test laid out in *Swayne*, even as supplemented by additional factors recognized in some of our cases. Rather, it employed a fifteen-factor test established under a Department of Labor regulation.

On March 19, 1999, the Idaho Department of Labor adopted a comprehensive set of regulations pertaining to the employment security law, including a regulation to flesh out the independently established business prong. IDAPA 09.01.35.112.04., which was applied by the Commission to the present controversy, provides:

> **Proving Worker is Engaged in Independently Established Business.** To meet the requirement of Section 72-1316(4)(b), Idaho Code, it must be proven that a worker is engaged in an independently established trade, occupation, profession or business. The following factors shall be considered in this determination:
>
> a. Skills, qualifications, and training required for the job;
> b. Method of payment, benefits, and tax withholding;
> c. Right to negotiate agreements with other workers;
> d. Right to choose sales techniques or other business techniques;
> e. Right to determine hours;
> f. Existence of outside businesses or occupations;
> g. Special licensing or regulatory requirements for performance of work;
> h. Whether the work is part of the employer's general business;
> i. The nature and extent of the work;
> j. The term and duration of the relationship;
> k. The control of the premises;
> l. Whether the work has the authority to hire subordinates;
> m. Whether the work owns or leases major items of equipment or incurs substantial unreimbursed expenses, provided, that in a case where a worker leases major items of equipment from the alleged employer;
> > i. The terms of the lease; and
> > ii. The actions of the parties pursuant to those terms must be commercially reasonable as measured by applicable industry standards.
> n. Whether either party would be liable to the other party upon peremptory or unilateral termination of the business relationship; and

hauling expenses, without reimbursement.

14

o. Other factors which, viewed fairly in light of all the circumstances in a given case, may indicate the existence or lack of an independently established trade occupation, profession or business.

The origin of all 15 of these factors is not entirely clear, although the regulation does include the three *Swayne* factors (l, m, and n), the method of payment (b), and the right to determine hours (e).

The appeals examiner made findings regarding each of the factors and those findings were adopted by the Commission.[4] As the Court has not based its decision on the regulation or on this part of the Commission's ruling, it is not necessary to examine the findings in detail. However, some of the findings deserve comment. Factor (f) calls for an inquiry as to whether a worker has outside businesses or occupations. As mentioned above, the hearing examiner found that each driver, in theory, had the right and ability to maintain outside businesses or occupations. The Commission added an interesting twist, citing a Colorado Court of Appeals case and stating, "To be engaged in an independent business a worker must actually provide similar services to others at the same time he or she works for the putative employer." This requirement is not part of the jurisprudence of Idaho, as no decision of record lends even remote support for such a contention. Indeed, *Hammond* indicates otherwise. 94 Idaho 67, 408 P.2d at 913. If a worker has the right to perform work for others at the same time he is under contract with the putative employer, this would seem to lend at least some support to the existence of an independently established business.

With regard to factor (m), which is a somewhat convoluted take-off of the second *Swayne* factor, the Commission's analysis was clearly flawed. In its briefing, Giltner points out that the auditor, who initially determined the reclassified drivers were employees, did not consider whether the terms of the leases were commercially reasonable as measured by applicable industry standards and, in fact, testified that this factor was not relevant. Giltner points out that it presented evidence the lease arrangements were commercially reasonable and in accordance with industry wide standards. This evidence was unrebutted. Yet, the appeals examiner determined:

> There is no evidence in the record for the Appeals Examiner to determine if the relationship between Giltner, Inc. and the reclassified drivers are, in fact,

---

[4] All previous references to findings of the appeals examiner were to findings related specifically to the independently established business prong.

commercially reasonable as measured by applicable industry standards, <u>other than the testimony of Mr. Paulson and Mr. Blevins that it is.</u> Giltner, Inc. did not provide a copy of any lease used by any other commercial operator in a similar situation to compare if the terms and conditions of the lease as used by Giltner, Inc. does, in fact, meet those industry standards.

(emphasis added). Giltner was not obligated to present a copy of any other lease for comparison. The unrebutted evidence submitted by Giltner, including the testimony of Messrs. Paulson and Blevins, could not be discounted or disregarded unless the appeals examiner found it to be inherently improbable. This Court has stated the rule as follows:

> The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial. *Manley v. Harvey Lumber Co.,* 175 Minn. 489, 221 N.W. 913, 914. In *Jeffrey v. Trouse*, 100 Mont. 538, 50 Pac.2d 872, 874, it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability. And, in *Arundel v. Turk*, 16 Cal.App.2d 293, 60 Pac.2d 486, 487, 488, the rule is stated thus: "Testimony which is inherently improbable may be disregarded, * * * but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions."

*Dinneen v. Finch*, 100 Idaho 620, 626-7, 603 P.2d 575, 581-2 (1979) (quoting *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447-8, 74 P.2d 171, 175 (1937)). The appeals examiner and Commission had no grounds for disregarding unrebutted evidence on the one factor that was specific to the lease arrangement before it. The appeals examiner and Commission simply had no basis to discount and disregard the unrebutted evidence presented by Giltner that its lease arrangement was commercially reasonable as measured by applicable industry standards.

Of further interest is the fact that nowhere in the appeals examiner's findings relative to the independently established business prong does the appeals examiner reference the fact that the reclassified drivers operated under Giltner's DOT authority. While it was mentioned in the third general finding and apparently did play a significant part in the Commission's decision, neither the appeals examiner nor the Commission mentioned it as a factor in their analysis of the independently established business prong. The only Idaho case directly on point, *Hammond*, assigned no significance to this factor in determining that the drivers maintained an independently established business, even though they operated under the federal and state authority of Allied Van Lines and only hauled for the benefit of Hammond Transfer.

16

In sum, I disagree with the single factor test adopted by the Court in this case. I would not apply the fifteen-factor test established by the Department of Labor regulation. I would apply the three-factor test that originated with *National Trailer*, which was adopted in *Swayne* as the interpretative gloss for the independently established business prong, and which has been applied by this Court since, albeit with the inclusion from time to time of certain additional factors. It is not an onerous test or a high hurdle and I believe the record here supports the conclusion that Giltner cleared that hurdle. I would reverse and hold the reclassified drivers were not covered under the employment security law.